Joseph M. Alioto (SBN 42680)
Theresa D. Moore (SBN 99978)
Jamie Miller (SBN 271452)
**ALIOTO LAW FIRM**
One Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: jmiller@aliotolaw.com
Email: tmoore@aliotolaw.com

Lingel H. Winters (SBN 37759)
**LAW OFFICES OF
LINGEL H. WINTERS**
275 Battery Street, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-2941
Facsimile: (415) 393-9887
Email: Sawmill2@aol.com

*Attorneys for Plaintiffs
And All Others Similarly Situated*

Matt Powers (SBN 212682)
**O'MELVENY & MYERS LLP**
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701
Email: mpowers@omm.com

*Attorneys for Defendants*
CAPITAL ONE F.S.B.; CAPITAL ONE
FINANCIAL CORPORATION; CAPITAL
ONE BANK

[ADDITIONAL COUNSEL APPEAR ON
PAGE 19]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| MELVIN SALVESON, et al., <br><br>                 Plaintiffs, <br><br>     v. <br><br> JP MORGAN CHASE & CO; et al., <br><br>                 Defendants. | Case No: 4:13-cv-05816-SBA <br><br> **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** <br><br> Date:        March 26, 2014 <br> Time:       2:30 p.m. <br> Courtroom:  By Telephone <br><br> **CLASS ACTION** |

     Pursuant to the Court's Standing Order, Plaintiffs and Defendants hereby jointly submit this Joint Case Management Conference Statement in advance of the telephone Case Management Conference set by the Court for March 26, 2014 at 2:30 p.m. On March 5, 2014, the Parties held a meet-and-confer to discuss the preparation of this Joint Case Management Conference Statement.

## 1.    Jurisdiction and Service:

     The Parties agree that the Court has original jurisdiction under 28 U.S.C. §§ 1331, 1332(d), 1337 and sections 4 and 16 of the Clayton Antitrust Act 15 USC §§ 15 and 26.

a.     Plaintiffs' Statement

On January 8, 2014, Plaintiffs filed their Proof Of Service herein with proofs under declaration of perjury that all defendants have been served except HSBC North America[n] Holdings, Inc. and HSBC Holdings PLC., which Plaintiffs intend to serve under the Hague Convention. On March 19, 2014, Plaintiffs re-served the Capital One Defendants at 1680 Capital One Drive, McLean, VA 22102. All defendants, including HSBC North America Holdings, Inc. submitted to the jurisdiction of this Court by signing and filing the Joint Stipulation To Enlarge Defendants' Time To Respond To Complaint and the Joint Stipulation As To Deadlines for Motion Practice, which the Defendants filed in this Court on January 8, 2014 and February 5, 2014, respectively.

b.     Defendants' Statement

Defendants state that Capital One F.S.B., Capital One Financial Corporation, Capital One Bank, HSBC Holdings plc (incorrectly named in the Complaint as "HSBC Holdings, PLC"), and HSBC North America Holdings Inc. (incorrectly named in the Complaint as "HSBC North American Holdings, Inc.") have not been served.

As to Capital One, although Plaintiffs claimed in their January 8, 2014 Proof of Service that the Capital One Defendants were served by Plaintiffs' personal service on the Corporation Service Company on December 19, 2013 (Dkt. #10), the Corporation Service Company sent Plaintiffs' counsel, Lingel H. Winters, "Rejection of Service of Process" letters for each of the Capital One Defendants noting that Corporation Service Company was not authorized to accept service for the Capital One entities named.  (A copy of these letters is attached here as Exhibit A and were provided again to Plaintiffs' counsel by email on March 13, 2014.)  Capital One has not yet been able to confirm Plaintiffs' assertion that "[o]n March 19, 2014, Plaintiffs re-served the Capital One Defendants at 1680 Capital One Drive, McLean, VA 22102."

As to HSBC, Plaintiffs have not filed any certificate of service with the Court for "HSBC North American Holdings, Inc."  Moreover, as with the Capital One entities, Plaintiffs' January 8, 2014 Proof of Service claims personal service on "HSBC Holdings, PLC" by service on CT Corporation, and CT Corporation informed Plaintiffs by letter dated December 23, 2013 that

2

1   Plaintiffs' service was ineffective.  (A copy of this letter is attached here as Exhibit B and also was

2   filed on this Court's docket as Docket Entry No. 8.)

3          In addition, the Capital One and HSBC entities dispute Plaintiffs' assertion that this Court

4   could have personal jurisdiction over these entities.  Non-Defendant Capital One Bank (USA), N.A.

5   is the only Capital One entity that issues credit cards.  Neither HSBC North America Holdings Inc.

6   (which is a U.S. holding company) nor HSBC Holdings plc (which is a U.K. holding company)

7   issues credit cards in the United States, and both entities dispute that personal jurisdiction is

8   appropriate in this Court.

9          The Capital One and HSBC entities further disagree with Plaintiffs' assertion that any

10  defenses on grounds of insufficiency of service of process or lack of personal jurisdiction have been

11  waived by virtue of the filing of a stipulation with this Court to extend the time to respond to the

12  Complaint.  These defenses are expressly provided for under Federal Rule of Civil Procedure 12(b),

13  which requires only that such defenses "must be made before pleading if a responsive pleading is

14  allowed," and none of the circumstances constituting waiver under Rule 12(h) are met here.  The

15  Ninth Circuit and numerous district courts within the Circuit have rejected Plaintiff's waiver

16  argument.  *See, e.g.*, *Benny v. Pipes*, 799 F.2d 489, 493 (9th Cir. 1986) amended, 807 F.2d 1514 (9th

17  Cir. 1987) ("Generally, a motion to extend time to respond gives no hint that the answer will waive

18  personal jurisdiction defects, and is probably best viewed as a holding maneuver while counsel

19  consider how to proceed."); *U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt.,*

20  *LLC*, C 11-4577 CW, 2012 WL 1156396 (N.D. Cal. Apr. 6, 2012) (same); *Read v. Moe*, 899 F.

21  Supp. 2d 1024, 1029 (W.D. Wash. 2012) (same).

22         Capital One's counsel has offered to accept service on Capital One Bank (USA), N.A.'s

23  behalf if Plaintiffs desired to amend their complaint and name that entity as a defendant in place of

24  the irrelevant parties.  Counsel for the HSBC entities has similarly offered to attempt to resolve

25  service and jurisdictional disputes.  To date Plaintiff's counsel has declined to engage in substantive

26  discussions on these issues.

27

28

2.       **Substance Of The Action**

a.       <u>Plaintiffs' Statement</u>

This is a private antitrust class action brought under the authority of sections 4 and 16 of the Clayton Antitrust Act 15 USC §§ 15 and 26, alleging that plaintiffs and the class of payment cardholders were injured and damaged  by reason of Defendants and their co-conspirators violations of the Sherman Act 15 USC §1  in that the Defendants and their co-conspirators contracted, combined and conspired between and among themselves   to fix, peg, and stabilize the hidden fees charged to the plaintiff cardholders each and every time the cardholders used their payment cards that displayed the logos of Visa, MasterCard or both.  Plaintiffs allege that the conspiracy has been carried out through written agreements to fix prices. Plaintiffs allege that Defendants have engaged in their unlawful price-fixing conspiracy since at least January 1, 2000, and continuing to the present.

In addition, the plaintiff cardholders allege that the defendant banks and their co-conspirator banks conspired and agreed to fraudulently conceal from the plaintiffs the Interchange Fees that they agreed to charge the plaintiff cardholders.  Pursuant to the Defendants" and their co-conspirators' per se unlawful agreements to fix, peg, and stabilize Interchange Fees between and among themselves, the plaintiff cardholders and members of the class have paid more than they would have in the absence of the unlawful agreements.  The plaintiffs on behalf of themselves and those similarly situated claim actual damages, to be trebled as a matter of law pursuant to Congressional mandate, and injunctive relief prohibiting Defendant banks and their co-conspirator banks and clearinghouses from engaging in conduct which contributes directly or indirectly to fix, peg, or stabilize fees charged to cardholders and to enjoin, prohibit and dissolve the agreements among and between the banks and their co-conspirators and prohibit the further agreement among Defendants and their co-conspirators of the hidden, concealment of fees charged by them to the plaintiffs and the class.  The approximate annual transactions by consumers in the United States using payment cards with the logos of Visa and MasterCard or both is approximately $1.8 trillion.  The average standard conspiratorial Interchange Fee is approximately 2.95% of each transaction.  Consequently, on an average, the annual amount of Interchange Fees unlawfully charged by the Defendant banks and

their co-conspirators is approximately $53.1 billion per year or $212,400,000,000 for at least the last four years.  Although this amount, during just the last four years is approximately only 25% of the amount received by the Defendant banks and their co-conspirators from the U.S. Government in the Troubled Asset Relief Program ("TARP"), it is a significant amount of disposable income that was unlawfully extracted by the Defendants and their co-conspirators from cardholders and the economy thereby causing severe economic distress to the victims of this unlawful conspiratorial conduct.

As alleged in the Complaint, defendants have unlawfully used their power.  (Compl. paras. 49-77.) The United States District Court for the Southern District of New York in *United States v. Visa USA, Inc., Visa International Corp., and MasterCard International Incorporated* 163 F.Supp.2d 322 (S.D.N.Y. 2001); aff'd 344 F.3d 229 at 229 (2nd Cir. 2003); *cert. denied.* 543 U.S. 811; 160 L.Ed.2d 14 (2004), entered a final judgment after 34 days of trial, affirmed on appeal, certiorari denied, finding that the defendant member banks owned Visa and MasterCard, who dominated the payment card business and who violated Section 1 of the Sherman Act by adopting, maintaining and enforcing their exclusionary rules to exclude competition, resulting in harm to consumer welfare. The District Court held:

> "Since defendants' exclusionary rules undeniably reduce output and harm consumer welfare, and defendants have offered no persuasive procompetitive justification for them, these rules constitute agreements that unreasonably restrain interstate commerce in violation of Section 1 of the Sherman Act." 163 F. Supp.2d 322 at p. 406.

As held by the U.S. Supreme Court, size carries with it the opportunity for abuse. *United States v. Paramount Pictures, Inc.* 334 U.S. 131 (1948).  ("The fact that the power created by size was utilized in the past to crush or prevent competition is potent evidence that the requisite purpose or intent attends the presence of monopoly power").

b. <u>Defendants' Statement</u>

Defendants dispute each of Plaintiffs' claims and deny that Defendants have engaged in any conspiracy in violation of federal or state antitrust laws for the interchange or merchant acceptance rules that Plaintiffs challenge.

**3.     Identification of Legal Issues:**

    a.     <u>Plaintiffs' Statement</u>

The  legal issues  include: (1) whether Defendants and their co-conspirators engaged in a contract, combination or conspiracy to fix, maintain or stabilize the Payment Card Interchange Fees of Visa and MasterCard branded cards in violation of Section 1 of the Sherman Act or in violation of the Cartwright Act (2)  whether Plaintiffs and other members of the class alleged by Plaintiffs were injured by the alleged unlawful conduct of Defendants and their co-conspirators and, if so, the appropriate class-wide measure of damages; (3) whether the class alleged by Plaintiffs should be certified.

    b.     <u>Defendants' Statement</u>

Defendants contend that the legal issues will include, among others:  (1) whether defendants have conspired in violation of Section 1 of the Sherman Act; (2) whether defendants have conspired in violation of the California Cartwright Act; (3) whether Plaintiffs participated in the relevant market and suffered a legally cognizable injury from the challenged conduct in order to establish standing; (4) whether Plaintiffs have antitrust standing to bring suit as "direct purchasers;" (5) whether Plaintiffs released their claims in the settlement of similar class action claims in the *In Re Credit/Debit Card Tying Cases,* No. CJC-03-004335 (Cal. Super. Ct.); (6) whether all claims accruing more than four years before the Complaint was filed are time-barred; and (7) whether the proposed action can be maintained as a class action, including whether the proposed Class meets the requirements of Federal Rule of Civil Procedure 23(a) and (b).

**4.     Motions:**

    a.     <u>Plaintiffs' Statement</u>

*1. Plaintiffs Have Filed An Opposition To The Unfounded Motion To Transfer*

On December 19, 2013, Defendants filed a Notice of "Tag-Along" Action in order to give the Clerk of the JPML notice of this action and to request that it be transferred to the United States District Court for the Eastern District of New York for coordinated pretrial proceedings in MDL 1720.  On January 15, 2014, the Clerk of the JPML in a Notice to Counsel Electronic Filing stated: "The Clerk of the Panel has determined the listed action [Salveson] is not appropriate for inclusion

in this MDL [no. 1720]." On February 12, 2014, Defendants filed a formal motion with the JPML under 28 U.S.C. § 1407 to have the case transferred. Plaintiffs have filed an Opposition to the motion on the grounds that MDL No. 1720 involves merchants' cases and is not appropriate for this cardholder case as the Clerk of the MDL Panel determined..

> *2. By Signing Written Briefing Schedules Filed With Judge Armstrong After The Clerk of The Panel Determined Salveson Was Not Appropriate For Inclusion In MDL No. 1720, Each Of The Defendants In Salveson Affirmed The Clerk's Determination And Waived Any Challenge*

Even more confirming of the correctness of the Clerk of the Panel's determination on January 15, 2014 that the *Salveson* case was " not appropriate for inclusion in this MDL [1720]" are defendants' subsequent written agreements to stipulated briefing schedules before Judge Armstrong in Oakland, California signed by counsel for each of the four defendant bank groups J.P. Morgan Chase & Co., Bank of America, Capital One Bank, and HSBC Bank USA, N.A. and affiliates and filed with the court in the Northern District of California by defendants on February 5, 2014 after the Clerk of the Panel's determination.

Shortly after the *Salveson* action was filed on December 16, 2014 in the Northern District of California and service was made on defendants on or about December 20, 2014, Mark Ladner of Morrison & Foerster representing Bank of America and all defendants called *Salveson* attorney Joseph Alioto and requested an extension of time for all defendants to respond. Mr. Alioto granted the extension from January 9, 2014 to February 10, 2014 and a Joint Stipulation To Enlarge Defendants' Time To Respond To Complaint was prepared by defendant Bank of America counsel and signed by all defendants' counsel and plaintiffs' counsel and filed with the Court on January 5, 2014 referencing Hon. Saundra Brown Armstrong.

Second, after the Clerk of the MDL rejected inclusion of the *Salveson* cardholder class action, as "not appropriate for inclusion" in the merchants' MDL No. 1720 on January 15, 2014, Mark Ladner of Morrison & Foerster in behalf of all defendants sent *Salveson* plaintiffs' attorney an e-mail dated

January 22, 2014 stating: "Now that the case will remain in Judge Armstrong's court…," confirming the present venue of the *Salveson* case before Judge Saundra Brown Armstrong in the Oakland Division of the Northern District of California. In that e-mail dated January 22, 2014, Mr. Ladner in behalf of all other *Salveson* defense counsel, and copying all other defense counsel, e-mailed *Salveson* plaintiffs' counsel, Joseph Alioto as follows:

**From:** Ladner, Mark P. [mailto:MLadner@mofo.com]
**Sent:** Wednesday, January 22, 2014 10:50 AM
**To:** Joe M. Alioto (josephalioto@mac.com); Jamie Miller
**Cc:** Greene, Peter E; Andrew J. Frackman (AFrackman@OMM.com); 'Rudzin, Abby' (arudzin@omm.com); David S. Lesser - Wilmer Cutler Pickering Hale and Dorr LLP (David.Lesser@wilmerhale.com); Miller, Michael B.; Rosenberg, Jeffrey K.
**Subject:** Salveson v. JPMorgan Chase

Joe and Jamie,

Now that the case will remain in Judge Armstrong's court, the defendants wanted to discuss next steps. Specifically, we wanted to propose a schedule for briefing the motion to dismiss which we intend to bring in response to the complaint. Currently, the defendants' response to the complaint is due on February 10. We would like to propose the following: February 28 for the opening brief, April 14 for the opposition brief, May 6 for the reply brief. In addition, Judge Armstrong's rules limit moving and opposition briefs to 15 pages and replies to 10 pages. Although the brief is not yet written, I believe 15 pages will not be enough for either side and would like to suggest we agree to 35 pages for the opening and opposition briefs, and 15 pages for the reply.

Please let me know whether you agree to what I have proposed; if so, we will prepare a stipulation for your review. If you would like to discuss any of the above or suggest different dates or page limits, please note that today is my last day in the office until February 3. In my absence, please contact my partner, Mike Miller – mbmiller@mofo.com or 212.468.8009 – or any of the other members of the defense group. Thank you in advance for your cooperation. Mark

The next day, January 23, 2014, Mr. Alioto, responded, agreeing to additional pages for briefs and a "traditional Rule 16 Pretrial Order setting forth all the significant filing and discovery cut-off dates, concluding with the pretrial and trial dates. As a kickoff, we will want to include our motion for collateral estoppel with your motion to dismiss."

On January 27, 2014, and February 4, 2014, Mr. Alioto had telephone conversations with Michael Miller of Morrison & Foerster who agreed to a briefing schedule for Defendants' Motion to Dismiss and for plaintiff's Motion for Collateral Estoppel at the same time as Defendants' Motion to Dismiss

8

as follows:

March 28 for Defendants' opening brief for Motion to Dismiss and Plaintiff's Motion for Collateral Estoppel; May 16 for Opposition briefs; June 10 for Reply briefs.

Insisting on urgency, Morrison & Foerster per Mr. Ladner and Michael B. Miller then prepared Stipulations embodying the above agreed on briefing schedule and page limits, obtained consents from all defense counsel and plaintiff's counsel for signature and filed the Stipulations with the Court on February 5, 2014 in confirmation of the Clerk of the Panel's January 15, 2014 determination that *Salveson* is "not appropriate for inclusion in MDL [1720]." (Dec. Winters Ex. F).

Suddenly—out of the blue, defendants sharply reversed course and filed the instant Motion For Transfer Under 28 U.S.C. sec. 1407 before the Panel on February 12, 2014. This sudden and erratic behavior indicates a tactical maneuver to get out of Judge Armstrong's court without regard for the prior commitments to the briefing schedule before Judge Armstrong, or the merits of the motion.

First, Mr. Ladner's statement in his January 23, 2014 e-mail in behalf of all defense counsel that "Now that the case will remain in Judge Armstrong's court" is a confirmation of the Clerk of the Panel's January 15, 2014 e-mail rejection of the inclusion of *Salveson et al v. JP Morgan Chase & Co. et al* CAN/4:13-cv-05816, a cardholder class action, as "not appropriate for inclusion in this MDL [1720]," *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* MDL No. 1720.  Defendants' written agreements to stipulated briefing schedules before Judge Armstrong signed by counsel for each of the four defendant bank groups J.P. Morgan Chase & Co., Bank of America, Capital One Bank, and HSBC Bank U.S.A., N.A. and affiliates on February 5, 2014, *after* the Clerk of the Panel's determination that the *Salveson* case was "not appropriate for inclusion in MDL [No. 1720]" constitutes a waiver and confirms that the Clerk of the Panel's determination was correct and that the proceeding merits no stay

1      b.    <u>Defendants' Statement</u>

2      There are no motions currently pending before this Court.

3      In October 2005, the JPML established MDL 1720 in the United States District Court for the

4 Eastern District of New York and transferred approximately 55 complaints that asserted antitrust

5 violations based on alleged conduct in the setting of Visa and MasterCard interchange fees.  On

6 February 12, 2014, Defendants filed a motion with the JPML under 28 U.S.C. § 1407 to have the

7 case transferred.  That motion is fully briefed for the Panel, and Defendants have requested oral

8 argument before the Panel.  Plaintiffs' argument that Defendants waived their right to transfer this

9 action is not before this Court.

10      Defendants will file their motion to dismiss by March 28, 2014, and it will be fully briefed on

11 or before June 10, 2014.[1]  If the motion to dismiss is denied, Defendants anticipate moving for

12 summary judgment.

**5.      Amendment of Pleadings:**

14      a.    <u>Plaintiffs' Statement</u>

15      Plaintiffs believe that the Court should order Defendants to produce to Plaintiffs copies of

16 any materials that have been provided in MDL 1720 relative to the subject matter herein.  Such a

17 production is merely a matter of making an additional copy of materials already collected and

18 produced by Defendants in MDL No. 1720.

19      b.    <u>Defendants' Statement</u>

20      Plaintiffs have yet to request any materials that have been provided in MDL 1720, but

21 Defendants agree to discuss such a production with Plaintiffs.  Defendants note that under Plaintiffs'

22 theory that this case is not related to the MDL actions, much of the materials would not be relevant

23 here.  Moreover, Plaintiffs' assertion that Defendants merely need to "mak[e] an additional copy of

24 materials" they produced in MDL 1720 is incorrect, because those materials contain confidential

25 third-party information that Defendants were permitted to produce only in the MDL.  Defendants

---

[1]  If certain Capital One or HSBC entities are unable to resolve with Plaintiffs issues concerning service of process and personal jurisdiction, separate motion practice on these discrete issues may also be necessary.

1    believe that any document production and amendment of the complaint should wait until

2    Defendants' motion to dismiss is resolved.

3    **6.     Evidence Preservation:**

4           The parties have met and conferred regarding appropriate evidence preservation.  The Parties

5    have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and

6    acknowledge their responsibility to preserve potentially relevant evidence, including electronically

7    stored information ("ESI").  Plaintiffs will preserve all potentially relevant documents in their

8    possession.  Defendants have put litigation holds in place, instructing their employees to preserve

9    documents and data they reasonably believe are relevant.

10   7.     **Disclosures:**

11          The Parties have not yet served their initial disclosures.  Plaintiffs' position is that Rule 26

12   disclosures should occur now since such a production of MDL 1720 materials is merely a matter of

13   making a copy of the materials already collected and produced in MDL 1720.  Defendants' position

14   is that the Parties should not bear the burden and expense of preparing initial disclosures—which are

15   unrelated to document production—unless and until Defendants' motion to dismiss is denied.

16   Moreover, as explained above, Plaintiffs' suggestion that the "production of MDL 1720 materials is

17   merely a matter of making a copy of the materials" is false.

18   **8.     Discovery:**

19          a.     <u>Plaintiffs' Statement</u>

20          *1. A Stay Is Improper and Unfair*

21          Plaintiffs propose to meet and confer with Defendants to develop a proposed discovery plan

22   for this litigation pursuant to Fed. R. Civ. P. 26(f).  Following the appointment of Interim Class

23   Counsel, counsel for Plaintiffs will submit a proposed Pretrial Order No. 2 that sets forth, in detail, a

24   proposed schedule and plan through the time of trial.

25           The rules do not provide for a stay.  The Ninth Circuit has held that once jurisdiction is

26   established, the Court has an obligation to proceed and that a stay is improper.

27   *Mach-Tronics, Inc. v. Zirpoli*  316 F.2d 820 (9th Cir. 1963) (The Ninth Circuit issued a writ of

28   mandate to vacate and set aside the stay of  a Sherman Act treble damages action pending a state

1    court action).  In the instant situation, Defendants have obtained nine years worth of discovery in the

2    merchants' cases MDL 1720; thus, a stay would not only be improper, it would be unfair by putting

3    Plaintiffs even further behind Defendants. But a stay would be extremely harmful in this case since

4    the injury to plaintiffs and the class is on-going.  *See* No.2 above.  Moreover, Plaintiffs are entitled to

5    discovery to prepare their Opposition to Motion to Dismiss.  Plaintiffs object to the false distinction

6    between class and merits discovery.

7            b.      Defendants' Statement

8            1.      *Discovery Should Be Stayed Pending a Ruling on the Motion to Transfer.*

9            Defendants contend that discovery is premature until after the JPML rules on Defendants'

10   motion to transfer, which is expected to occur sometime in May 2014.  It is Defendants' position that

11   this action should be transferred to MDL 1720 for coordinated pretrial proceedings with the other

12   actions involving allegations that Visa and MasterCard interchange fees were inflated by

13   Defendants' purportedly anticompetitive conduct.  The coordination of these cases will serve the

14   convenience of the parties and witnesses, promote the just and efficient conduct of the litigation, and

15   avoid inconsistent rulings.  Stay of discovery—and the entire action for that matter—until the JPML

16   decides a motion to transfer is routinely granted in this District.  *See, e.g.*, *Major-Mack v. Organon*

17   *USA, Inc.*, No. 13-CV-05421-JST, 2014 WL 296935, at *2    (N.D. Cal. Jan. 26, 2014) (staying

18   action "pending a final determination by the JPML as to the transferability of this action to MDL No.

19   1964"); *Yuan v. Lewey*, No. C 13-04010 WHA, 2013 WL 5954900, at *1 (N.D. Cal. Oct. 28, 2013)

20   (staying action pending the MDL's determination to transfer).  Accordingly, discovery should not be

21   allowed to proceed until a ruling is rendered by the JMPL on Defendants' motion to transfer.

22           2.      *Discovery Should Be Stayed Pending a Ruling on the Motion to Dismiss.*

23           Defendants further contend that other than the exchange of initial disclosures, discovery is

24   premature until after the Court rules on Defendants' motion to dismiss, which will be fully briefed

25   on June 10, 2014.  Courts in this district have repeatedly recognized that allowing discovery to

26   proceed when a potentially dispositive motion is pending can be a waste of the Court's resources and

27   the litigants' time and money—particularly, where, as here, discovery is unnecessary to resolve the

28   pending motion.  *See, e.g.*, *Hall v. Tilton,* No. C 08-3233 RMW (PR), 2010 WL 539679, at *2

1   (N.D. Cal. Feb. 9, 2010) (staying discovery until motion to dismiss is decided); *Hamilton v. Rhoads*,

2   C 11-0227 RMW (PR), 2011 WL 5085504, at *1 (N.D. Cal. Oct. 25, 2011) (discovery should

3   remain closed until potentially dispositive motion is decided); *Dumbrique v. Nakamura*, No. C 07-

4   3233 RMW (PR), 2011 WL 4527386, at *1 (N.D. Cal. Sept. 20, 2011) (allowing discovery only to

5   extent necessary to resolve threshold issue of qualified immunity).

6          Here, Defendants' motion addresses the threshold issue of whether Plaintiffs have standing to

7   bring this action.  If granted, Defendants' motion would dispose of Plaintiffs' entire case.  Therefore,

8   until the Court rules on that motion, it is unclear whether Plaintiffs' claims will proceed at all.

9   Moreover, Defendants' motion to dismiss also addresses whether the majority of Plaintiffs' claims

10  are time-barred.  Thus, the Court's ruling will likely narrow or focus the claims and issues in this

11  case in ways that will impact the Parties' discovery.  *See, e.g.*, *In re Graphics Processing Units*

12  *Antitrust Litig.*, C 06-07417 WHA, 2007 WL 2127577, at *5 (N.D. Cal. July 24, 2007) (discovery

13  stayed pending resolution of motions to dismiss so that the court and parties "will all be in a much

14  better position to evaluate how much, if any, discovery to allow").  Because it makes little sense to

15  spend time and money on discovery that may never be needed, Defendants request that discovery

16  open after the Court rules on Defendants' motion to dismiss.

17             3.     *Discovery Should Be Permitted on Class Certification Issues and Stayed on*
               *All Other Issues Pending a Ruling on the Motion for Class Certification.*
18

19         Defendants submit that this case is without merit and subject to dismissal.  However, if this

20  case proceeds beyond the pleading stage, Defendants believe that the Parties should work towards

21  first resolving whether class certification is appropriate.  *See* Fed. R. Civ. P. 23(c)(1) (stating that

22  court must address class certification at "an early practicable time").  Bifurcation would be expedient

23  because it would allow the Parties and the Court to focus on, and more quickly resolve, the issue of

24  class certification.  To that end, Defendants propose that the Parties' initial discovery focus solely on

25  issues necessary for class certification.  Defendants' proposal is the most economical way to

26  proceed.  There is no valid reason to subject the Parties to the costs of completing "full-blown" fact

27  and expert discovery on every issue that could be relevant in a class-wide trial before the Court even

28  decides whether this case will proceed on a class-wide basis.  Courts in this District routinely

1   bifurcate discovery in purported class action cases.  *See, e.g.*, *Juarez v. Jani-King of Cal., Inc.*, 273

2   F.R.D. 571, 576 (N.D. Cal 2011) (indicating that discovery was bifurcated subsequent to court ruling

3   on defendant's motion to dismiss, with "discovery relating to class certification commencing

4   immediately and merits discovery beginning if and once the Court certified the class"); *Yingling v.*

5   *eBay, Inc.*, No. C 09-01733 JW (PVT), 2010 WL 2382304, at *1 (N.D. Cal. June 10, 2010) (noting

6   that court bifurcated discovery into class certification and merits discovery).

7           As such, Defendants have proposed a discovery plan (outlined in Section 17) that sets a

8   reasonable briefing schedule for Plaintiffs' class certification motion and allows ample time for the

9   Parties to conduct class certification discovery.  Defendants also request that the Court set a further

10  Case Management Conference a few months after the class certification motion has been fully

11  briefed in order to set a trial date and all remaining deadlines to complete fact and expert discovery

12  in advance of trial.

13  **9.      Class Actions:**

14          Plaintiffs intend to seek class certification under Federal Rule of Civil Procedure 23 on

15  behalf of a class defined as:

16              All Visa and MasterCard Cardholders in the United States who
17              paid supracompetitive Interchange Fees to Defendants and their
                co-conspirators incident to the purchase of retail products or
18              services using a Visa or MasterCard Payment Card, at any time
                during the period at least since January 1, 2000 to and including
19              class certification, herein.  Excluded from the class are Defendants,
                any co-conspirators of Defendants, Defendants' predecessors,
20              successors, parent, subsidiaries, affiliates, officers and directors,
                federal and state government entities and agencies, cities,
21              countries, and other municipalities, and any judge, justice or
22              judicial officer presiding over this matter and members of their
                immediate family.

23  Defendants intend to oppose Plaintiffs' motion for class certification and contend that Plaintiffs and

24  other members of the proposed Class cannot satisfy the requirements of Rule 23.

25

26

27

28

**10.    Related Cases:**

  a. <u>Plaintiffs' Statement</u>

  Plaintiffs contend that there are no other cardholder class actions alleging the claims in this action at this time. The MDL 1720 cases are merchant cases. Any future-filed cases brought in the Northern District of California that meet the requirements of Civil Local Rule 3-12 should be transferred to Judge Saundra B. Armstrong.

  b. <u>Defendants' Statement</u>

  It is Defendants' position that this case is related to the cases currently proceeding in MDL 1720 because, like the plaintiffs in MDL 1720, Plaintiffs assert Sherman Act violations—purportedly on behalf of a nationwide class—based on allegations that Visa and MasterCard interchange fees were inflated by Defendants' purportedly anticompetitive conduct.  Therefore, Defendants have filed a motion to have this case transferred to MDL 1720.

**11.    Relief:**

  Plaintiffs seek money damages, including treble damages, for alleged violations of the antitrust laws and injunctive relief against alleged continued illegal practices.  Defendants deny that Plaintiffs or the other members of the proposed Class are entitled to any of the above relief (or any relief whatsoever).

**12.    Settlement and ADR:**

  The Parties agree that Settlement and ADR is not appropriate at this time.  Plaintiffs believe that settlement is not probable, and it is anticipated that a trial will be necessary.  Defendants believe they will be in a better position to discuss settlement after the motion to dismiss, motion for collateral estoppel, and motion for class certification are decided.

**13.    Consent to Magistrate Judge for All Purposes:**

  The Parties do not consent to have a magistrate judge conduct all further proceedings.

**14.    Alternative Means of Disposition:**

  The Parties agree that this case is not suitable for binding arbitration or a special master.  The Parties disagree whether this case should be transferred to the JPML.

1   **15.     Narrowing of Issues:**

2          The Parties agree that it is premature to consider the narrowing of issues at this time.

3   **16.     Expedited Trial Procedure:**

4          Defendants believe that this case is not suitable for an expedited schedule or streamlined

5   procedures.  Plaintiffs disagree.

6   **17.     Scheduling:**

7          a.      Plaintiffs' Statement

8          Plaintiffs request a future case management conference be scheduled approximately 35 days

9   following the appointment of Interim Class Counsel for the Plaintiffs.  At the next case management

10  conference, the Plaintiffs will be ready to be heard on: i) further scheduling matters; ii) Rule 26

11  disclosures; iii) and a protective order.  Plaintiffs believe the cut-off date should be December 31,

12  2014.

13         b.      Defendants' Statement

14         As set out above, Defendants believe that discovery would be inappropriate before

15  Defendants' motion to transfer is resolved.  It is Defendants' expectation that the JPML will decide

16  the motion to transfer sometime in May 2014, before Defendants' motion to dismiss will be fully

17  briefed.  Defendants also believe that discovery would be inappropriate before Defendants' motion

18  to dismiss is resolved and reserve the right to object to any discovery on the grounds that it is

19  premature and unduly burdensome under the circumstances.  Defendants therefore propose the

20  following schedule, were the Court to deny their motion to dismiss:

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

| EVENT | DATE |
|---|---|
| **Exchange of initial disclosures** | April 2, 2014 |
| **Fact discovery on class certification issues begin** | Date of Any Order Denying Motion to Dismiss ("Order Date") |
| **Deadline for Plaintiffs to file motion for class certification and to file any expert reports or declarations upon which Plaintiffs intend to rely on in support of class certification** [Approximately two (2) months after class discovery begins to give Plaintiffs time to conduct discovery from Defendants in order to move for class certification.] | Order Date + 60 days |
| **Deadline for Defendants to file opposition to motion for class certification and to complete expert discovery** [Approximately four (4) months after Plaintiffs file their motion for class certification to give Defendants time to conduct discovery on Plaintiffs' theory of class certification.] | Order Date + 180 days |
| **Deadline for Plaintiffs to file reply in support of motion for class certification** [Approximately two (2) months after Defendants file their opposition to Plaintiffs' motion for class certification.] | Order Date + 240 days |
| **Further Case Management Conference** [To discuss the trial date and all remaining deadlines to complete fact and expert discovery, including the deadline to file motions for summary judgment, to join parties or amend pleadings.] | Order Date + 330 days |

**18.    Trial:**

Plaintiffs demand trial by jury.  The Plaintiffs anticipate the length of trial will be five (5) weeks, and can be expedited by means of stipulations; bifurcation is neither suitable, nor desirable. Defendants believe that it is premature to make such an estimate at this time.

**19.    Disclosure of Non-Party Interested Entities or Persons:**

With the exception of Bank of America Corporation and Bank of America N.A., no party has filed their Certification of Interested Entities or Persons.  The Parties will file their Certification of Interested Entities or Persons on or before April 2, 2013.

**20.   Other Matters:**

The Parties are unaware of other matters that may facilitate the just, speedy, and inexpensive disposition of this action at this time.

Dated: March 20, 2014                    JOSEPH M. ALIOTO
                                         THERESA D. MOORE
                                         JAMIE MILLER
                                         **ALIOTO LAW FIRM**

                                         LINGEL H. WINTERS
                                         **LAW OFFICE OF LINGEL H. WINTERS**

                                         By:   /s/  Lingel H. Winters
                                                    Lingel H. Winters

                                         *Attorneys for Plaintiffs*

Dated: March 20, 2014                    MATT POWERS
                                         **O'MELVENY & MYERS LLP**

                                         By:   /s/  Matt Powers
                                                    Matt Powers

                                         *Attorneys for Defendants*
                                         CAPITAL ONE F.S.B.; CAPITAL ONE
                                         FINANCIAL CORPORATION; CAPITAL
                                         ONE BANK.

                                         TIMOTHY A. MILLER
                                         **SKADDEN, ARPS, SLATE, MEAGHER &
                                         FLOM LLP**

                                         By:   /s/  Timothy A. Miller
                                                    Timothy A. Miller

                                         *Attorneys for Defendants*
                                         JPMORGAN CHASE & CO.; JPMORGAN
                                         CHASE BANK, N.A.

JEFFREY K. ROSENBERG
**MORRISON & FOERSTER LLP**

By:  /s/  Jeffrey K. Rosenberg
        Jeffrey K. Rosenberg

*Attorneys for Defendants*
BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.

MICHAEL A. MUGMON
**WILMER CUTLER PICKERING HALE
AND DORR LLP**

By:  /s/  Michael A. Mugmon
        Michael A. Mugmon

*Attorneys for Defendants*
HSBC FINANCE CORPORATION; HSBC
BANK USA, N.A.; HSBC NORTH
AMERICA HOLDINGS INC.; HSBC
HOLDINGS PLC

**ADDITIONAL COUNSEL FOR DEFENDANTS**

ANDREW J. FRACKMAN (admitted *pro hac vice*)
ABBY F. RUDZIN (admitted *pro hac vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, NY 10036
Telephone: 212-326-2000
Facsimile:  212-326-2061
Email: afrackman@omm.com
Email: arudzin@omm.com

*Attorneys for Defendants*
CAPITAL ONE F.S.B.;
CAPITAL ONE FINANCIAL CORPORATION;
CAPITAL ONE BANK

19

TIMOTHY A. MILLER (SBN 154744)
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
525 University Avenue
Palo Alto, CA 94301
Telephone: 650-470-4620
Facsimile: 650-470-4570

*Attorney for Defendants*
JPMORGAN CHASE & CO.;
JPMORGAN CHASE BANK, N.A.

STUART C. PLUNKETT (SBN 187971)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, California 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522

MARK P. LADNER (admitted *pro hac vice*)
MICHAEL B. MILLER (admitted *pro hac vice*)
**MORRISON & FOERSTER LLP**
1290 Avenue of the Americas
New York, NY 10104
Telephone: 212-468-8000
Facsimile: 212-468-7900

*Attorneys for Defendants*
BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.

DAVID LESSER
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Telephone: 212-230-8800
Facsimile: 212-230-8888
Email: david.lesser@wilmerhale.com

*Attorneys for Defendants*
HSBC FINANCE CORPORATION;
HSBC BANK USA, N.A.;
HSBC NORTH AMERICA HOLDINGS INC.;
HSBC HOLDINGS PLC

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

**ECF ATTESTATION**

I Matt Powers am the ECF User whose ID and Password are being used to file this:

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**

In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Lingel H. Winters, Timothy A. Miller, Jeffrey K. Rosenberg, and Michael A. Mugmon concurred in this filing.

Dated: March 20, 2014                           MATT POWERS
                                                **O'MELVENY & MYERS LLP**

                                                By: /s/  Matt Powers
                                                        Matt Powers